UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUART GAMMON, <br>     Plaintiff, <br> v. <br> CHRIS WRIGHT, Secretary, U.S. Department of Energy, et al., <br>     Defendants. | Case No. 24-cv-05001-JSW <br><br> **ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTIONS TO DISMISS AND SETTING CASE MANAGEMENT CONFERENCE** <br><br> Re: Dkt. Nos. 23, 36 |

Now before the Court are motions to dismiss filed by (1) Chris Wright, Secretary, U.S. Department of Energy ("DOE") and the National Nuclear Security Administration ("NNSA") (collectively the "Federal Defendants"), and (2) Lawrence Livermore National Security, LLC ("LLNS").[1] The Court has considered the parties' papers, relevant legal authority, and the record in this case. For the reasons that follow, the Court HEREBY GRANTS, IN PART, AND DENIES, IN PART, the motions.

## BACKGROUND

Plaintiff Stuart Gammon ("Gammon") is a mixed race male, over 40 years old, who suffers from Attention Deficit Disorder. (Compl. ¶ 12.) He has worked as an SES.2 Chemist at LLNS since July 14, 1998 and alleges that he performed well and received positive performance reviews. (*Id.* ¶¶ 13, 15.) Gammon alleges that as a federal contractor LLNS "receives directions through NNSA and DOE." (*Id.* ¶ 14.) Some of Gammon's work involves national security related activities, and he alleges that has a security clearance approved by DOE. (*Id.* ¶¶ 14, 16.)

---

[1] Secretary Wright is automatically substituted in pursuant to Federal Rule of Civil Procedure 25(d).

1

On March 13, 2024, Gammon filed a complaint with the California Civil Rights Department ("CCRD") alleging harassment based on sex/gender, age, disability, and race, discrimination based on sex/gender, age, and disability, and retaliation. (*Id.* ¶ 11; LLNS Req. for Judicial Notice, Ex. A.)[2] Gammon received a right to sue letter that same day. (Compl. ¶ 11.)

Based on allegations discussed in more detail below, Gammon asserts claims against the Federal Defendants for: age discrimination in violation of the Age Discrimination in Employment Act, disability discrimination in violation of the Rehabilitation Act of 1973; sex and race discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); violations of the Whistleblower Protection Act, 5 U.S.C. section 2302(b)(8) (the "WPA claim"). Gammon brings analogous claims against LLNS under California's Fair Housing and Employment Act ("FEHA") and California Labor Code section 1102.5.[3]

**ANALYSIS**

**A.   Applicable Legal Standards.**

Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In a facial attack on jurisdiction, the factual allegations of the complaint are taken as true. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). A plaintiff is then entitled to have those facts construed in the light most favorable to him. *Id.* In contrast, a factual attack on subject matter jurisdiction occurs when a defendant challenges the actual lack of jurisdiction with affidavits or other evidence. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Defendants also move to dismiss for failure to state a claim under Rule 12(b)(6). Under Rule 12(b)(6), a court's inquiry generally is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, the Court can consider documents on

---

[2]   The Court GRANTS the request and takes judicial notice of the existence of the CDR complaint and statements he made in that document but does not take any disputed facts as true. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9thc Cir. 2001).

[3]   LLNS does not move to dismiss Gammon's age discrimination claim.

which the complaint necessarily relies, if a plaintiff does not contest their authenticity. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may also take judicial notice of certain facts, including matters of public record. *Id.* at 688-89.

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### B.     The Court Grants the Federal Defendants' Motion.

The Court lacks jurisdiction over claims against the Federal Government, or its agencies, unless the government has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Federal Defendants argue that Gammon fails to allege he is a federal employee and, therefore, fails to allege they have waived sovereign immunity. *See Lopez v. Johnson*, 333 F.3d 959, 961 (9th Cir. 2003) (Title VII and Rehabilitation Act); *Daniels v. Browner*, 63 F.3d 906, 908 (9th Cir. 1995) (ADEA); *see also Kerr v. Jewell*, 836 F.3d 1048, 1053 (9th Cir. 2016) (noting WPA protects federal employees).

Gammon makes the conclusory allegation that the Federal Defendants were "[a]t all relevant times" his employer. (Compl. ¶¶ 2-3.) In his opposition, Gammon clarifies that he alleges that he relies on a theory of joint employment. *See EEOC v. Global Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019) ("It is now well-settled that an individual can have more than one employer for Title VII purposes."). In that *Global Horizons*, the court adopted a common law agency test to determine if an entity is a joint employer. *Id.* at 637-38 (citing factors from *Nationwide Mut. Ins. Co v. Darden*, 503 U.S. 318 (2003)). Those factors include:

the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden,* 503 U.S. at 323-24.

The only facts Gammon alleges to support a joint employment relationship are: LLNS "receives directions through" the Federal Defendants; clearances are issued by DOE; NNSA is responsible for "directing what projects are needed for the Department of Defense"; and NNSA "provides funds for safety audits and financial audits at LLNS, the outcome of [which] can impact whether or not LLNS is paid." (Compl. ¶ 14.) The Court concludes these facts are insufficient to plead that either Federal Defendant is his employer, joint or otherwise.

Accordingly, the Court GRANTS the Federal Defendants' motion.[4]

**C.    The Court Grants, in Part, and Denies, in Part, LLNS's Motion.**

**1.    Disability Discrimination.**

In order to state a claim for disability discrimination, Gammon must allege he "(1) suffered from a disability or was regarded as suffering from a disability, (2) could perform the essential duties of a job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Zamora v. Sec. Indus. Specialists, Inc.*, 71 Cal. App. 5th 1, 31 (2021) (quoting *Glynn v. Sup. Ct.*, 42 Cal. App. 5th 47, 53 n.1 (2019)). The third element is the only element at issue.

According to Gammon, three LLNS management officials required him to undergo a fitness for duty examination, "based on [his] mental health," with the intent to revoke his security

---

[4] The Federal Defendants also argued that even if Gammon alleged he was a federal employee he failed to sufficiently allege he properly exhausted his Whistleblower Retaliation claim. Gammon did not address that argument in his opposition. The Court does not reach this alternative argument but will require Gammon to address this issue if he files an amended complaint. In addition, because Gammon's federal discrimination and retaliation claims are based on many of the same facts as his state law claims, he must be prepared to remedy the defects outlined in the Court's analysis of his claims against LLNS.

4

1  clearance. (Compl. ¶ 53.) LLNS argues that a fitness for duty examination was a business
2  necessity that does not qualify as an adverse employment action, relying in part on *Santos v.*
3  *County of Humboldt*, No. 22-cv-7485-RMI, 2023 WL 6882748, at *5 (N.D. Cal. Oct. 18, 2023).
4  In *Santos*, the plaintiff brought a claim based on the failure to engage in the interactive process and
5  alleged the defendant retaliated against him by requiring a fitness for duty exam. The court
6  reasoned that the fitness for duty exam was a necessary part of that process. It also reasoned that
7  the exam "did not materially impact Plaintiffs employment, which is the lynchpin of adverse
8  employment action analysis." *Id.*, at *6 (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 928
9  n.2 (9th Cir. 2000)); *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1051 (2005) ("[A]n
10 employee must demonstrate that he or she has been subjected to an adverse employment action
11 that materially affects the terms, conditions, or privileges of employment.").

12 The Court expresses no opinion on whether the request for Gammon to submit to a fitness
13 for duty examination was, as a matter of law, job related and a business necessity. However,
14 Gammon fails to include any facts that suggest it materially affected the terms, conditions, or
15 privileges of his employment with LLNS. By way of example only, he does not allege that his
16 security clearance was revoked or that LLNS disciplined or demoted him.

17 Accordingly, the Court GRANTS LLNS's motion to dismiss this claim.

18 **2.  Sex Discrimination.**

19 In order to state a claim for sex discrimination, Gammon must allege facts that he was a
20 member of a protected class, was performing his job satisfactorily, and suffered an adverse
21 employment action because of his sex. *See, e.g., Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355
22 (2000). Gammon alleges that "males are not given an opportunity to job share, which was carried
23 out by management with the intent to decrease [his] hours by 50%." (Compl. ¶ 74.) Gammon
24 neither alleges that he requested the opportunity to job share nor alleges that female employees
25 who were similarly situated to him received that opportunity.

26 Gammon also alleges that female employees were able to report directly to their spouses
27 but male employees were not. Again, Gammon fails to connect those allegations to himself. (*Id.*)
28 He alleges that female employees routinely asked him to do "'man jobs,' like filling chemicals."

United States District Court
Northern District of California

(*Id.*) Gammon fails to allege that filling chemicals was unrelated to his job duties and fails to demonstrate how those requests materially impacted the terms and conditions of his employment. Finally, Gammon incorporates allegations relating to the conduct of four female employees who allegedly were aware that Gammon was a victim of domestic violence but fails to provide a nexus to any adverse employment action and their conduct. (*Id.* ¶ 68.)

Accordingly, the Court GRANTS LLNS's motion to dismiss this claim.

### 3. Race Discrimination.

#### a. Exhaustion.

A plaintiff must exhaust administrative remedies as a "jurisdictional prerequisite" to bringing a claim for violations of FEHA. *Miller v. United Airlines*, 174 Cal. App. 3d 878, 890 (1985). "The administrative exhaustion requirement is satisfied if FEHA claims in a judicial complaint are like and reasonably related to those in the [CCRD] complaint or likely to be uncovered in the course of a [CCRD] investigation." *Guzman v. NBA Automotive, Inc.*, 68 Cal. App. 5th 1109, 1118 (2021) (cleaned up).

A court should construe FEHA's exhaustion requirement liberally "to accomplish its purposes, including the resolution of potentially meritorious claims on the merits." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 794 (N.D. Cal. 2015). In order to determine if a claim has been exhausted courts may "consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. … The crucial element of a charge of discrimination is the factual statement contained therein." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002), *abrogated on other grounds by Fort Bend Cty., Texas v. Davis*, 587 U.S. 541 (2019).

Gammon did not cite race as a basis for discrimination, and the complaint he submitted to the CCRD is sparse. (CCRD Complaint ¶ 3.) Gammon argues that he did exhaust his discrimination claim because harassment is a form of discrimination. He also alleges he suffered adverse employment actions because of his race. FEHA treats discrimination and harassment as distinct wrongs, but, on this record, the Court cannot conclude as a matter of law that Gammon

6

1  failed to exhaust his discrimination claim.  *See, e.g., Roby v. McKesson Corp.*, 47 Cal. 4th 686,
2  707 (2009) ("Although discrimination and harassment are separate wrongs, they are sometimes
3  closely interrelated, and even overlapping, particularly with regard to proof.").
4  　　　　The Court DENIES LLNS's motion to dismiss, without prejudice to renewing this
5  argument in a subsequent motion to dismiss or in a motion for summary judgment.

　　　　**b.**　　**Elements.**

　　　　To state a claim for racial discrimination, Gammon must allege he was a member of a protected class, was performing his job satisfactorily, and suffered an adverse employment action because of his race.  *Guz*, 24 Cal. 4th at 955.  Gammon makes the conclusory allegation that two Caucasian employees and one Asian employee were treated "more favorably than [him], and were not subject to adverse employment actions."  (Compl. ¶ 90.)  There are no additional facts from about the alleged adverse actions or about how the comparator employees were treated differently.  The Court concludes that these allegations are insufficient to plausibly allege that Gammon was subject to an adverse employment action, or otherwise discriminated against, because of his race.

　　　　Gammon also alleges that non-white female employees were given opportunities for tuition reimbursement that he did not receive.  (*Id.* ¶ 89.)  Although these allegations may be sufficient to allege a claim for discrimination based on sex, the Court concludes they do not plausibly allege differential treatment based on race.

　　　　Accordingly, the Court GRANTS the motion to dismiss this claim.

**4.**　　**Hostile Work Environment.**

　　　　In order to state a claim for a hostile work environment, Gammon must discriminatory harassment that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment."  *Bailey v. San Francisco Dist. Attorney's Office*, 16 Cal. 5th 611, 627 (2024) (cleaned up); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("When the workplace is permeated with *discriminatory* intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (emphasis added).  Gammon incorporates by reference all of his earlier allegations into this claim but specifically alleges he was subjected to an

7

1  unsafe work environment and was subject to a "near physical altercation" with another employee.
2  (Compl. ¶¶ 102-106.) However, he does not include facts to create a nexus to any of his allegedly
3  protected traits and the conduct at issue.
4     Accordingly, the GRANTS LLNS's motion to dismiss this claim.

### 5. Whistleblower Retaliation.

Gammon's final claim against LLNS is for retaliation in violation of California Labor Code section 1102.5(b), which prohibits retaliation if an employee discloses information they reasonably believe "violate[s] a federal or state law, rule or regulation." Cal. Lab. Code § 1102.5(b); *see also Mueller v. Cty. of Los Angeles*, 176 Cal. App. 4th 809, 822 (2009). Gammon alleges that he reported issues relating to the dumping of Lithium Hydroxide and alleged violations of LLNS's Laboratory Waste Management guidelines and violated "safety protocols and policy." (Compl. ¶¶ 21-22; *see also id.* ¶¶ 24-26, 115-117.) Gammon has not alleged which – if any – federal or state laws he reasonably believed this conduct violated.

Accordingly, the Court GRANTS LLNS's motion to dismiss this claim.

## D. The Court Grants Leave to Amend.

A court generally should grant a plaintiff leave to amend. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). The Court cannot say amendment would be futile in this case. Accordingly, if Gammon can do so in accordance with his obligations under Federal Rule of Civil Procedure 11, he may file an amended complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motions to dismiss. If Gammon decides to amend his claims, he shall file an amended complaint by no later than March 25, 2025. Defendants shall answer or otherwise respond by April 15, 2025.

//

//

//

The Court FURTHER ORDERS to appear for an initial case management conference on May 2, 2025 at 11:00 a.m. The parties' joint case management conference statement shall be due by April 25, 2025.

**IT IS SO ORDERED**.

Dated: March 4, 2025

_____
JEFFREY S. WHITE
United States District Judge